W. L. WAGGONER et als. v. PHILIP BALL et als.

*Evidence.*

1. It is not error to rule out evidence which could not aid the jury in passing on the issues to be tried. So, where the issue was, whether a certain tract of land in dispute, was intended by a testator to pass under a devise of his "home place," evidence that he had given parcels of land to certain of his sons, before his death, is irrelevant.

2. The admission of immaterial evidence is no ground for a new trial, unless it appears that its admission probably worked injury to the appellant.

CIVIL ACTION for the recovery of land, tried before *MacRae, Judge,* and a jury, at Spring Term, 1886, of DAVIDSON Superior Court.

The following is a copy of so much of the case settled on appeal as is necessary to a proper understanding of the opinion of the Court:

The land in controversy is the 64 acres known as the "Ball Tract." Both plaintiffs and defendants claim under Joseph Waggoner, deceased.

The plaintiffs claim that this tract is a part of the "Home Place," described in the will of Joseph Waggoner, a copy of which will is hereto attached, and that by the first and ninth sections of said will, it was devised to Joseph Waggoner's widow for her life, and after her death to the father of plaintiffs, William Waggoner, who is dead, leaving plaintiffs his heirs-at-law.

The defendants claim under a deed from Henry Waggoner, executor of Joseph Waggoner, deceased, and it is admitted that said Henry was at the time of the sale, in September, 1868, the sole executor of Joseph Waggoner, and which sale and convey-ance, defendants say, was made under the authority and in pur-suance of the 12th section of said will, and passed title to the 64 acres, the same not being part of the "Home Place."

The defendants set up several other defences, but upon the trial, after much testimony had been given, all others were aban-

doned, and it was agreed that the only question was whether the home place includes the Ball Tract of 64 acres.

On the trial, the plaintiffs offered evidence, tending to prove that the land in controversy, which had been bought by the testator from Peter Myers in the year 1812, together with the other tracts, one known as the Jacob Waggoner grant, containing 360 acres, on which the testator's dwelling-house and out-buildings stood, and the other known as the Joseph Waggoner grant, containing 87 acres, all being contiguous tracts, were cultivated and treated as one farm by the testator, and were known and called by him his "home place"; that one field cultivated by the testator up to the time of his death, extended over portions of the three tracts, covering near five or six acres in controversy. That the tract called by him " the Shuler Tract," mentioned in the 9th item of the will, adjoined the Joseph Waggoner grant and the tract in controversy, which latter tract is on this trial for convenience called the " Ball Tract." That the Myers tract, which is directed in another item of the will to be sold by the executor, was bought by the testator from David Myers, and lies about one mile from the home place.

And on the other hand, testimony was offered by the defendants, tending to prove that the Ball Tract did not join the Shuler place, and was not considered by the testator a part of the home place, but was treated by him as a separate and distinct tract.

D. W. Waggoner, a witness for the defendants, testified that Joseph Waggoner died in 1858, aged about 74 years.

On cross-examination by plaintiffs' counsel, this witness testified that Joseph Waggoner had eight or ten children, naming them. Witness was asked: " If at the time he, Joseph Waggoner, made this will, he had not placed his other sons in possession of valuable tracts of lands formerly belonging to him ?"

Defendants objected. Objection sustained. Plaintiffs excepted.

Dempsey Clinard, a witness for the defendants, testified that there were about 340 acres at the home place left after a sale of 105 acres by the administrator of William Waggoner; that a considerable portion on the east end is woods, and there is some clearing on the south-west portion.

Objected to by plaintiffs. Overruled, and plaintiffs except.

The material parts of the will are as follows:

" My will and desire is further, that my said wife, Margaret, shall continue to reside at my home place, and occupy my dwelling-house during her life, together with my son William, and that they shall farm together on my home place; but should they disagree, and should my said wife determine to live alone without my said son William, then and in that case, my will and desire is, that all the improved and cultivated land on my home place shall be divided equally and fairly between them, by five disinterested men selected by them, or by suit, so that each shall have one-half in value of said improved land, and shall farm separately, my said wife to occupy the dwelling-house, and to have and farm upon half of said improvement during her life, and all the products and profits made on said land, also a sufficient amount of timber to keep up said place and improvement, including fire-wood.

＊　　　＊　　　＊　　　＊　　　＊　　　＊

" 9. I give and bequeath to my son William Waggoner, my home place upon which I now reside, except the life interest or estate heretofore given to my wife for and during her life. Also all of my Shuler tract of land, adjoining my home plantation, to have and to hold to him and his heirs in fee simple forever."

＊　　　＊　　　＊　　　＊　　　＊　　　＊

" 12. It is my desire and will that my interest in the mill and tract of land situated on Abbott's Creek, (it being three-fourths of said mill and tract of land), adjoining Jacob Miller, Peter Owen and others, be sold by my executors hereinafter named, and also that my Myers place, adjoining William C. Robertson, Sam'l Yokely and others, be sold by my said executors, both tracts to

be sold on such terms and time as my executors may deem best."

There were no exceptions to the charge of the presiding Judge.

The case was left to the jury, by consent of all parties, upon the question whether the 64 acre tract was or was not part of the home place, and all the testimony bearing on other matters was withdrawn from the jury.

The jury responded in favor of the defendants.

Rule for new trial for errors as alleged. Rule discharged.

Judgment in favor of defendants, and the plaintiffs appealed to this Court.

*Messrs. D. G. Fowle* and *Raper*, for the plaintiffs.
*Mr. M. H. Pinnix*, for the defendants.

Merrimon, J. (after stating the facts). On the trial, the findings of the jury upon the issues submitted to them, were made to turn upon the question, whether or not a particular part of land described in the complaint, and designated as the " Ball Tract," constituted a part of the testator's "home place," devised by the ninth clause of his will to his son William, who was the ancestor of the plaintiffs. Evidence was introduced on the part of the plaintiffs, tending to prove that it did, and on the part of the defendants to prove the reverse.

On the cross-examination of a witness for the plaintiffs, he was asked, " if at the time he, Joseph Waggoner, (the testator,) made this will, he had not placed his other sons in possession of valuable tracts of land, formerly belonging to him."

This question and any answer to it were objected to by the defendants, and the objection was sustained by the Court. This is assigned as error. Any answer to this question, so far as we can see, could have no material bearing upon the issues submitted to the jury, or upon the material question, which both parties conceded must control the findings of the jury upon

them. Neither an affirmative nor a negative answer to it would tend to prove that the "Ball tract" was or was not part of the testator's "home place," and could not therefore be material. Apparently, the question was intended to elicit immaterial evidence. If in any possible view of the matter at issue, the excluded evidence could be pertinent and material, it should have been made so to appear, to the end the Court could pass upon its competency. The burden was on the defendants to show its relevancy and materiality, and this should appear in the assignment of error.

It was insisted in the argument by the counsel of the appellants, that the evidence was competent to show the condition and circumstances of the testator's family at the time he executed his will. In some possible cases, where the will is to be construed, such evidence might be competent, but no question arose on the trial as to the proper interpretation of the testator's will. The question was, whether or not a particular clause of it embodied the land in question. There is no question as to the testator's purpose—that is plain—he devised, and intended to devise, to his son named, his "home place." This in nowise depended, so far as appears, upon what he had given his other sons, whether by deed or will. The difficulty arises, not in ascertaining the meaning of the will, but in identifying the land in question as part of the "home place," fitting it to the description in the will.

The evidence embraced by the second exception seems to have been unimportant. It tended slightly to identify the "home place," and may have borne upon the issue as to damages. It does not appear that it was incompetent. If, however, it were not strictly so, it did not of itself tend to injure or prejudice the appellants, nor does it appear that it did so. The admission of immaterial evidence that does not tend to injure the appellants is not ground for a new trial, unless it appears that it did, or probably did so. It is because the complaining party has suffered, or probably has suffered, wrong, by reason of the error of

the Court, that he is entitled to have his case retried.   It is not every harmless slip or mistake that offers him such right.

The law does not temporize or trifle with parties.   It seriously intends that every person shall have substantial justice administered to him and for his benefit, and that he shall have fair legal opportunity to obtain it.   Generally, what is inconsiderately conceded to one party, is to the prejudice of another party.

There is no error, and the judgment must be affirmed.

No error.                                        Affirmed.