STATE OF NORTH CAROLINA v. CLEATUS AARON FORD

No. 503A84

(Filed 1 October 1985)

1. Criminal Law § 91.1— denial of continuance—no prejudice
    There was no prejudice from the trial judge's denial of defendant's motion for a continuance where defendant was arraigned on three bills of indictment for first degree sexual offenses against a nine-year-old girl, the dates in two of the indictments were changed on the day the case was called for trial, and

defendant was convicted only of the offense charged in the unchanged indictment.

**2. Rape and Allied Offenses § 4.2— first degree sexual offense—testimony of pediatric expert who had not examined victim—admissible**

In a prosecution for first degree sex offenses against a nine-year-old girl, the trial court did not err by admitting the testimony of an expert in pediatrics and infectious diseases who had not examined the victim or defendant where the victim had testified that she had engaged in an act of fellatio with defendant and the State had previously established that the victim had gonorrhea in her throat. The witness was in a better position than the jury to form an opinion as to how children contract the disease; moreover, there was no prejudice because defendant was acquitted of the two charges to which the testimony related.

**3. Criminal Law § 89.10— first degree sexual offense—cross-examination of victim's mother by State—no prejudice**

In a prosecution for first degree sexual offenses with a nine-year-old girl, the trial court did not err by permitting the State to cross-examine the victim's mother, a defense witness, concerning two hypodermic syringes, alcohol swabs, and two gag wedding gifts found by the police during a search of her home. The purpose of the questions was to create some inference in the minds of the jury that the mother was either a drug addict or a thief, the State made no effort to connect the items to defendant, and it was questionable whether the cross-examination had an impeaching effect on the mother's character.

**4. Criminal Law § 117.1; Rape and Allied Offenses § 11.1— first degree sexual offense against a nine-year-old child—requested instruction on credibility of child witness not given—no error**

In a prosecution for first degree sexual offenses against a nine-year-old girl, the trial court did not err by refusing to give a cautionary instruction on the credibility of a child witness where the witness was ten years old at the time of the trial and had been found competent to testify, the trial court instructed the jury that they were the sole judges of the credibility of each witness, the judge highlighted in his summation the inconsistencies in the child's statement to the police and her testimony, and the judge recounted the testimony of the child's psychologist and mother concerning her propensity to lie. Moreover, the record does not contain the instruction defendant would have had the trial court give and the transcript does not show that defendant ever submitted his proposed instruction in writing.

**5. Criminal Law § 122.1— jury's request to review evidence denied—no prejudice**

In a prosecution for three first degree sexual offenses against a nine-year-old girl where the dates of two of the offenses were in dispute, the trial court did not erroneously or prejudicially refuse the jury's request to review some of the evidence as to a particular date, even if the judge refused the request on the mistaken belief that he had no discretion. It would have been difficult for the trial judge to extract all of the testimony given about the dates of the offenses without seeming to give improper regard to certain portions of the

evidence, any attempt by the court to clarify the evidence on the two disputed dates would have certainly created more confusion, and defendant was convicted only of the offense for which there was no conflict concerning the date. N.C.G.S. 15A-1233(a).

Justice BILLINGS took no part in the consideration or decision of this case.

APPEAL by defendant from the judgment entered by *Mills, J.,* at the 14 May 1984 Criminal Session of CABARRUS County Superior Court.

Defendant was charged in separate indictments with first degree sexual offense. The charges against him were consolidated for trial. The jury returned a verdict of guilty on one charge of first degree sexual offense and not guilty on the remaining two charges. Defendant was sentenced to the mandatory term of life imprisonment.

At trial, the State offered evidence tending to show that on 17 December 1983, defendant, age forty-three, entered the bathroom in the home of his girlfriend, Phyllis Bennett, while it was occupied by her nine year old daughter, Marla R. Bennett, and sexually assaulted her by inserting his fingers into her vagina. Marla testified that defendant, who had spent the previous night at her home with her mother, came into the bathroom while her mother was next door washing clothes at the laundromat. Marla stated that defendant told her not to tell her mother what he had done or that he would tell her that she had done something bad. Marla testified that she did run and tell her mother, but that her mother would not believe her. Mrs. Jane Wike, Marla's maternal grandmother, testified that later that day as she was preparing to give Marla a bath she spotted blood in Marla's panties. To Mrs. Wike's knowledge, no one has ever found blood on Marla's underwear again. Mrs. Wike further related that one afternoon thereafter Marla broke down and told her that as she was wiping herself after using the bathroom defendant walked in and stuck two of his fingers in her.

The State also produced evidence through Marla Bennett that she had been sexually abused on two other occasions. According to Marla's testimony, on 24 January 1984 and 31 January 1984, defendant again entered the bathroom in her home which she was using, pulled down his pants, and forced her to perform fellatio.

Marla told other individuals about these incidents, including her teacher, her grandmother, her aunt, a medical doctor, Dr. George Engstrom, her psychologist, Peter Bishop, and two police officers. Dr. Engstrom testified that he examined Marla in February of 1984 and discovered that she had Neisseria gonorrhea in her throat.

The testimony of these witnesses substantially corroborated Marla's testimony. Mr. Peter Bishop also testified however that he had been seeing Marla since 22 September 1983 concerning her serious problem with lying.

Defendant testified on his own behalf and denied any knowledge of the alleged sex offenses committed against Marla Bennett. Defendant cooperated with the police request that he be examined for gonorrhea. The results of this testing were negative.

Defendant offered the testimony of Phyllis Bennett, among others, to show that defendant was not alone with or even around either of her children on some of the occasions Marla had indicated. Mrs. Bennett stated that on 17 December 1983 she did not go to the laundromat and that Marla did not tell her at any time that she had been inappropriately touched by defendant. Mrs. Bennett also explained that her daughter has a serious problem with lying and has been receiving help to overcome this tendency.

At the conclusion of the evidence, the jury found defendant guilty only of the count of first degree sexual offense committed on 17 December 1983.

*Lacy H. Thornburg, Attorney General, by David S. Crump, Special Deputy Attorney General, for the State.*

*Romallus O. Murphy and Herman L. Taylor, for defendant-appellant.*

BRANCH, Chief Justice.

[1] By his first assignment of error, defendant contends that the trial court violated his constitutional right to a fair trial and to the effective assistance of counsel by denying his motion for a continuance.

On the day the case was called for trial, defendant was arraigned on the three bills of indictment presented against him. In two of the three indictments, Nos. 84CRS3915 and 84CRS3916, the State had changed the dates of the alleged offenses from 20 January to 24 January 1984 and from 2 February to 31 January 1984. The date of the alleged sex offense charged in Indictment No. 84CRS3914 remained 17 December 1983. Defendant moved for a continuance on the basis that the changed dates in two of the three indictments materially affected his defense because he needed more time to investigate and to locate additional witnesses to account for his whereabouts on the new dates. The State, citing *State v. Effler*, 309 N.C. 742, 309 S.E. 2d 203 (1983), argued that because the victim was a nine year old child defendant was put on notice that the dates alleged in the indictments could not be relied on for any degree of certainty. In denying defendant's motion, the trial court stated that the amended dates in the indictments did not constitute such a material change to justify a continuance of the trial.

Ordinarily, a motion to continue is addressed to the sound discretion of the trial judge and his ruling, absent an abuse of discretion, is not reviewable on appeal. *State v. Smathers*, 287 N.C. 226, 214 S.E. 2d 112 (1975). However, if the motion is based on a constitutional right, the question presented is not one of discretion, but is a reviewable question of law. *State v. McFadden*, 292 N.C. 609, 234 S.E. 2d 742 (1977). Nevertheless, the denial of a motion to continue, regardless of its nature, is "grounds for a new trial only upon a showing by the defendant that the denial was erroneous and also that his case was prejudiced as a result of the error." *State v. Branch*, 306 N.C. 101, 104, 291 S.E. 2d 653, 656 (1982).

In the present case, the record clearly reveals that defendant was not convicted of the charges contained in the indictments in which the dates were changed. Defendant was only convicted for the sex offense charged in Indictment No. 84CRS3914. This indictment had consistently provided since 5 March 1984 that this sex offense had been committed on 17 December 1983. By the time of defendant's 14 May 1984 trial, defendant had been given more than two months' notice that he would be tried for his alleged commission of the crime occurring on 17 December 1983. Thus, defendant's argument that he needed more time to prepare his de-

fense because of the changed date obviously does not apply to the 17 December offense. Because defendant was not convicted under the indictments containing the amended dates, he cannot show that he was prejudiced by the trial judge's denial of his motion to continue. As a result, we need not address the propriety of the trial court's ruling. This assignment of error is overruled.

By his second assignment of error, defendant argues that the trial court improperly admitted into evidence the testimony of a State's expert witness and the fruits of a search of a defense witness's home.

[2] The first portion of this assignment of error questions the admissibility of the testimony of State's witness, Dr. Laura Gutman. Dr. Gutman is an expert in the field of pediatrics and infectious diseases. Although Dr. Gutman had not examined Marla Bennett or defendant in this case, she was called by the State as an expert to explain how sexually transmittable diseases, gonorrhea in particular, are in fact contracted.

Defendant objected to the admission of this testimony on the grounds that it was irrelevant and incompetent because the witness had not personally examined any person related to the case and that it would improperly inflame the passion and the prejudice of the jury.

The substance of Dr. Gutman's testimony revealed that Neisseria gonorrhea is a bacterial infection which is transmitted by direct contact of the infected tissue of one person with a mucous membrane of another. These mucous membranes include the throat, the eyes, the vagina, the rectum, and the urethra. Dr. Gutman explained that although the available means of transmitting the disease in children and in adults were identical, the most common methods of contracting the disease in the two groups were different. With adults, Dr. Gutman stated that the disease is normally transmitted through standard sexual intercourse. The most common methods for transmitting the disease to children, however, are by rectal intercourse or by oral intercourse with an adult. In Dr. Gutman's opinion, gonorrhea is transmitted to the throat of a child during sexual activity in which infected secretions from the penis are applied to the throat through the child's mouth.

We hold that the trial court properly overruled the defendant's objections to this testimony. First, defendant's objection on the basis of relevancy is unfounded. Dr. Gutman's testimony was relevant for the purpose of medically corroborating the testimony of Marla Bennett that she had engaged in an act of fellatio with defendant. The State had previously established that Marla had contracted gonorrhea in the throat. Dr. Gutman's testimony as to how this venereal disease is normally transmitted to children supported the State's contention that Marla had contracted gonorrhea as a result of being forced to perform fellatio on defendant.

Secondly, evidence offered by Dr. Gutman was competent expert opinion testimony. In determining the admissibility of an expert opinion, the test is "whether the witness because of his expertise is in a better position to have an opinion on the subject than is the trier of fact." *State v. Wilkerson*, 295 N.C. 559, 569, 247 S.E. 2d 905, 911 (1978). Under this test, Dr. Gutman's testimony was properly admitted. Her specialized knowledge in the area of pediatrics and infectious diseases aided the jury in understanding the relationship between the act of fellatio and the transmission of gonorrhea in children. Because of her medical expertise, Dr. Gutman was in a better position to form an opinion as to how children, like Marla Bennett, contract this venereal disease. Obviously, Dr. Gutman's testimony assisted the jury's understanding of the evidence in this case even though she had not personally examined defendant or the victim.

Furthermore, defendant's contention that Dr. Gutman's testimony unfairly stirred the passion and the prejudice of the jury against him is without merit. Again, defendant cannot show that he was prejudiced by this evidence when he was acquitted of the two charges to which Dr. Gutman's testimony related.

[3] Defendant also contends in his second assignment of error that the trial court improperly permitted the State to cross-examine defense witness, Phyllis Bennett, concerning items found by the police during a search of her home. During their investigation of this case, the police seized from the Bennett home two hypodermic syringes, alcohol swabs, and two gag wedding gifts purchased for friends. Defendant asserts that the cross-examination was improper because the seized items were never connected to him, but were introduced to inflame the jury and

suggest misconduct on his part. The State contends that the seized items were relevant on the issue of defense witness Phyllis Bennett's credibility and were not offered to impeach the character of defendant.

On cross-examination a witness in a criminal action may be impeached or discredited by a wide range of disparaging questions, including whether she had committed specified criminal acts or had been guilty of specified reprehensible or degrading conduct. *State v. Waddell*, 289 N.C. 19, 220 S.E. 2d 293 (1975), *death sentence vacated*, 428 U.S. 904, 49 L.Ed. 2d 1210, 96 S.Ct. 3211 (1976).[1] The scope of the cross-examination, however, rests within the discretion of the trial judge and his rulings will not be disturbed absent a showing that the verdict was thereby improperly influenced. *State v. Ziglar*, 308 N.C. 747, 304 S.E. 2d 206 (1983).

We hold defendant has failed to demonstrate how a discussion of these items on cross-examination constituted an abuse of discretion or prejudicial error. This record does not disclose what type of gag gifts the wedding presents were. Furthermore, defendant does not attempt to show how these items in Phyllis Bennett's possession in any way suggested misconduct on his part. The record indicates that the State made no effort to connect the items to defendant, although the syringes and alcohol swabs were the kind of thing defendant himself could have taken from the hospital where he and the witness both worked as nursing aides.

Rather, the purpose behind the State's questions in this regard was not to impeach the character of defendant, but to create some inference in the minds of the jury that Phyllis Bennett was either a drug addict or a thief. In any event, defendant has not shown how the State's reference to Mrs. Bennett's property negatively reflected upon his character. It is also questionable whether this cross-examination had an impeaching effect on Mrs. Bennett's character. On redirect examination, Mrs. Bennett explained that in her nurse's aide work she uses hypodermic syringes to withdraw urine from the catheters of diabetic patients in order to check their sugar. She stated that the uniform

---

1. Defendant's case was tried before the North Carolina Evidence Code became effective on 1 July 1984.

has pockets and that she places alcohol swabs, pencils, syringes and anything else she uses daily in her pockets, forgets about them, and accidentally carries them home. She testified that she always returned those items to the hospital. Because defendant cannot show how he was prejudiced or how the verdict might have been improperly influenced by the State's cross-examination of Mrs. Bennett, we overrule this assignment of error.

[4] Defendant next assigns as error the trial court's refusal to give a cautionary instruction concerning the credibility of a child witness. Defendant argues that such an instruction should have been given in view of Marla Bennett's age and Peter Bishop's testimony concerning Marla's problem with lying. Although the transcript indicates that the trial court denied defendant's timely specific request for an instruction on "the credibility of the child as a witness," it does not show that defendant ever submitted his proposed instruction in writing to the trial court for the record. Likewise, the record on appeal does not contain the instruction defendant would have had the trial court give.

In this jurisdiction, our law clearly provides that if a specifically requested jury instruction is proper and supported by the evidence, the trial court must give the instruction, at least in substance. *State v. Spicer,* 285 N.C. 274, 204 S.E. 2d 641 (1974); *State v. Hooker,* 243 N.C. 429, 90 S.E. 2d 690 (1956). Without a copy of the proposed instruction, our review of whether the instruction was proper under the evidence in this case is extremely difficult. The notion that a trial court is required to give an instruction on the credibility of a child's testimony has been previously rejected by the Court of Appeals in *State v. Bolton,* 28 N.C. App. 497, 221 S.E. 2d 747, *cert. denied,* 289 N.C. 616, 223 S.E. 2d 390 (1976), and *State v. Jenkins,* 35 N.C. App. 758, 242 S.E. 2d 505, *cert. denied,* 295 N.C. 470, 246 S.E. 2d 11 (1978). These cases, in accordance with the prevailing view from other jurisdictions, have taken the position that the decision whether or not to instruct the jury respecting its evaluation of a child witness's credibility in a criminal case must be left in the trial judge's discretion. Annot., 32 A.L.R. 4th 1196 (1984). We agree that better reasoning supports this view since "the trial judge can more accurately determine those instances when the instruction would be appropriate." *Bolton,* 28 N.C. App. at 499, 221 S.E. 2d at 748.

In the present case, Marla Bennett was ten years old at the time of trial and had been found competent to testify. The trial court instructed the jury that they were the sole judges of the credibility of each witness. In his summation of the evidence to the jury, the trial judge highlighted the inconsistencies in Marla's statement to the police and her testimony. He further recounted the testimony of Marla's psychologist and her mother concerning Marla's propensity to lie. Therefore, viewed in its totality, the instructions given by the trial court adequately addressed all the concerns that would have been emphasized to the jury through defendant's special instruction. We hold the trial court did not abuse its discretion by denying defendant's request for a special instruction on the credibility of the child-victim's testimony.

[5] In his final assignment of error, defendant complains that the trial judge erred in refusing to exercise his discretion concerning whether to review some of the evidence at the jury's request after it had begun its deliberations. After deliberating for nearly an hour and a half, the jury returned to the courtroom with a question and the following exchange occurred:

THE COURT: The bailiff tells me you all have a question of the Court. Who is the spokesman for the jury? Yes, sir?

FOREMAN: In our discussions, we have agreed among ourselves there is some confusion as to some of the evidence on a particular date. Is there any possibility we can have that read to us?

THE COURT: I'll have to put it this way. The evidence has been presented, and you all have to recall it the best you can.

This Court has repeatedly stated that the decision whether to grant or refuse a request by the jury, after beginning its deliberations, for a restatement of the evidence lies within the discretion of the trial court. *State v. Lang*, 301 N.C. 508, 272 S.E. 2d 123 (1980); *State v. Fulcher*, 294 N.C. 503, 243 S.E. 2d 338 (1978). Likewise, N.C.G.S. § 15A-1233(a) in pertinent part provides that if a jury after retiring for deliberation requests a review of certain testimony, "[t]he judge in his discretion . . . may direct that requested parts of the testimony be read to the jury." It is also well settled that "there is error when the trial court refuses to exercise its discretion in the erroneous belief that it has no

discretion as to the question presented." *Lang*, 301 N.C. at 510, 272 S.E. 2d at 125.

In the case *sub judice*, defendant contends that the exchange between the court and the jury clearly demonstrates that the trial judge refused to grant the jury's request on the mistaken belief that he had no discretion in the matter. Without further explanation by the trial judge for his ruling, such a determination is merely speculative. In any event, even assuming the trial court refused to exercise its discretion, defendant must demonstrate that the trial court's ruling constituted prejudicial error.

In *State v. Ford*, 297 N.C. 28, 252 S.E. 2d 717 (1979), the jury during its deliberations asked the trial court to review the evidence presented as to the date and time the defendant and a State's witness had been arrested. Although the trial judge refused to grant the jury's request based on his mistaken belief that he could not do so, this Court held his actions were not prejudicial and added:

> The requested evidence was, for the most part, conflicting, inconclusive, or not in the record. We note that the trial judge correctly instructed the jury that it was their duty "as best you can to recall all of the evidence that was presented. . . ." It would have been difficult, if not impossible, for the trial judge to review this evidence in a comprehensible manner. Here, any attempt to review such evidence would likely have raised more questions than it would have answered.

*Ford*, 297 N.C. at 31, 252 S.E. 2d at 719.

Similarly, the jury in the case currently before us had a question concerning a particular date. It would have been equally difficult for the trial court in this case to extract all the testimony given about the dates of the offense without seeming to give improper regard to certain portions of the evidence. For this reason and others, we have maintained that the granting of such a request by the jury is generally inadvisable. *Fulcher*, 294 N.C. at 514, 243 S.E. 2d at 346. Moreover, in light of the State's concession in its brief that it could not prove the dates of the two fellatio sex offenses with any degree of certainty, any attempt by the trial court to clarify the evidence on this point would have certainly created more confusion. Furthermore, defendant cannot

demonstrate that he was prejudiced by the trial court's ruling because he was acquitted on the two charges in which there had been a question concerning the dates on which these crimes had been committed. There was no conflicting evidence presented concerning the date of the only crime for which defendant was convicted. We hold that defendant has failed to show that the trial judge erroneously refused to exercise his discretion and that his rulings resulted in prejudicial error.

Defendant received a fair trial free from prejudicial error.

No error.

Justice BILLINGS took no part in the consideration or decision of this case.